**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CLARA J. HORNBERGER,<br>            Plaintiff<br><br>V<br><br>VARTAN GROUP, INC., NICOLE L.<br>CONWAY, and THE ESTATE OF BRIAN<br>GOODYEAR<br>            Defendants | No.<br><br>Civil Action – Law<br><br>(Electronically Filed)<br><br><br>Jury Trial Demanded |

## <u>COMPLAINT</u>

AND NOW, TO WIT, comes Plaintiff Clara J. Hornberger by and through her

counsel, Solomon Z. Krevsky, Esq. and Krevsky Bowser LLC and files the following

Complaint:

### INTRODUCTION

1.      Plaintiff Clara J. Hornberger ("Hornberger") brings this action against her

former employer, Defendant Vartan Group, Inc. ("Vartan"), Defendant Nicole L.

Conway ("Conway"), for statutory claims arising under Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. §2000(e) ("Title VII") and/or the Pennsylvania

Human Relations Act, 43 P.S. §951, et seq. ("PHRA"); for common law claims against

The Estate of Brian Goodyear for assault, battery, and the intentional infliction of

emotional distress by Brian Goodyear ("Goodyear"); and for common law claims

against Defendant Vartan for negligent supervision and retention.  This is an action

brought to remedy violations of Plaintiff's civil rights and to redress unlawful

employment practices that discriminate on the basis of sex and to provide

appropriate relief to Plaintiff Hornberger who was adversely affected by such

practices.  Plaintiff Hornberger was subjected to a sexually hostile and abusive work

environment by agents of Defendant Vartan and retaliated against as a result of her

opposition to same.  The unlawful harassment and retaliation resulted in Plaintiff

Hornberger's termination from employment with Defendant Vartan effective

August 27, 2020.

2.      Plaintiff Hornberger's claims arise by virtue of sustained and egregious sexual

misconduct and harassment perpetrated against Plaintiff by a managerial agent of

Defendant Vartan, and Vartan's failure to exercise reasonable care to prevent, correct or remedy sexual harassment in the workplace.  The sexual misconduct and harassment caused Plaintiff to endure a hostile and abusive working environment. Plaintiff Hornberger alleges, *inter alia*, that she was subjected to a sexually hostile and abusive work environment and, despite numerous complaints about the harassment, Defendant Vartan failed to take effective remedial action.  Plaintiff Hornberger was retaliated against by Defendants Vartan and Conway as a result of her opposition to the sexual misconduct and harassment in the workplace.  As a result of the hostile work environment and retaliation, Plaintiff Hornberger suffered significant pecuniary losses and emotional distress.

3.      This action seeks to remedy violations of Plaintiff's civil rights and to redress harm caused by (a) the severe and pervasive sexual misconduct and harassment that permeated Defendant's workplace, (b) Defendant's knowledge of same but failure to act reasonably to prevent, correct or remedy unlawful sexual harassment, and (c) Defendant's discriminatory, harassing and retaliatory conduct.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Hornberger is an adult female who at all times relevant hereto resided in the Commonwealth of Pennsylvania and was formerly employed by Defendant Vartan.

5.      Defendant Vartan Group, Inc. is a commercial property firm headquartered in Harrisburg, Dauphin County, Pennsylvania.  Defendant builds, maintains and manages real estate throughout Central Pennsylvania. Vartan is a Pennsylvania corporation, registered to do business within the Commonwealth of Pennsylvania, and which regularly conducts business within the Commonwealth of Pennsylvania with offices and facilities located 3605 Vartan Way, Suite 301, Harrisburg, Dauphin County, Pennsylvania 17110.

6.      Defendant Vartan is an employer as that term is defined under and pursuant to Title VII and the PHRA.

7.      Defendant Conway is an adult individual residing in the Commonwealth of Pennsylvania who, at all relevant times hereto, served as the Executive Vice President and General Counsel for Defendant Vartan.

8.      At all relevant times hereto, Brian Goodyear was an adult individual residing in the Commonwealth of Pennsylvania and served as a Construction Manager for Defendant Vartan.

9.      The Estate of Brian Goodyear is liable to Plaintiff Hornberger for the actions of Brian Goodyear described herein including, but not limited to, assault (Count V), battery (Count VI) and the intentional infliction of emotional distress (Count VII).

10.     At all relevant times hereto, Defendant Vartan had continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII.

11.     This Court has jurisdiction over Plaintiff Hornberger's legal claims pursuant to 28 U.S.C. §1331 as this case arises under Title VII.  Moreover, this Court has jurisdiction over Plaintiff Hornberger's state law claims pursuant to 28 U.S.C. §1367.

12.     Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) as the facts and circumstances, acts and/or omissions and incidents and/or actions alleged herein took place in this judicial district.

13.     All preconditions to the filing of this action, by way of pursuit and exhaustion of administrative remedies with the Pennsylvania Human Relations Commission ("PHRC") and the U. S. Equal Employment Opportunity Commission ("EEOC") have been satisfied.

14.     At all relevant times hereto, Defendant Vartan acted through its agents, servants, apparent agents, and/or employees, including but not limited to Defendants Conway and Goodyear, who collectively acted within the scope of authority, course of employment and/or under the direct control of Defendant Vartan.

**UNDERLYING FACTS**

15.    Plaintiff Hornberger commenced employment with Defendant Vartan on or about January 30, 2017, as Laborer/Carpenter.

16.    From the time she commenced employment with Defendant Vartan until late July/early August 2020, Plaintiff worked within Defendant Vartan's Construction Group.

17.    Plaintiff was fully qualified to perform all duties and responsibilities associated with the Laborer/Carpenter position and performed such duties and responsibilities in a satisfactory manner and consistent with Defendant Vartan's legitimate expectations.

18.    In her capacity as Laborer/Carpenter in Defendant Vartan's Construction Group, Plaintiff reported directly to Goodyear, Defendant Vartan's Construction Manager.

19.    Brian Goodyear was a manager prone to angry outbursts and offensive rhetoric.

20.    By way of illustration but not limitation, in or around July 2018 Goodyear spiraled into a fit of rage on a construction site.  While screaming profanities and referring to Plaintiff as "stupid," Goodyear ripped down and destroyed a metal ceiling grid in a bathroom that Plaintiff and others had remodeled.

21.    Goodyear frequently spoke to Plaintiff in an offensive, verbally abusive and

threatening tone.

22.    Goodyear frequently spoke to Plaintiff with a condescending, dismissive and

misogynistic attitude.

### The Sexual Harassment and Sexual Assaults

23.    Goodyear also subjected Plaintiff to misogynistic conduct and remarks,

egregious sexual harassment and unwelcome and unwanted sexual advances.

24.    On one occasion, Goodyear directed Plaintiff to "shut the fuck up and get

your ass over to 17 North Front Street [a construction site] if you know what's good

for you…"

25.    On many occasions, Goodyear yelled at Plaintiff calling her "stupid" or

"worthless" and referring to her as a "slut" or a "whore."

26.    On many occasions, Goodyear threatened Plaintiff with termination if she

were to report his sexual misconduct and harassment by telling her "if you don't do

what I'm fucking telling you to do, you'll need to find another fucking job" (or words

to that effect).

27.    Goodyear treated Plaintiff in a more hostile, abusive and threatening manner

than he did Plaintiff's male colleagues.

28.    Goodyear subjected Plaintiff to offensive, abhorrent, and sexually inappropriate comments and conduct in the workplace on account of her sex, female, including but not limited to the following:

a.    Directing inappropriate, lewd and sexually offensive remarks to Plaintiff. Goodyear frequently referred to Plaintiff in the presence of her male colleagues, as "cunt," "bitch," "stupid," "worthless," "slut," or "whore."

b.    Using sexually offensive language and conduct to describe sexual preferences including explicit and implicit requests for sex.

c.    Engaging in conduct and language in the workplace which was replete with sexual innuendo.

d.    Making inappropriate, degrading, and condescending remarks about women.

e.    Making inappropriate, degrading, and condescending remarks about Plaintiff because of her gender.

f.    Making comments and starting rumors about Plaintiff falsely implying she was sexually promiscuous.

29.     As a manifestation of his misogynistic attitude and disdain for Plaintiff as a

woman, Goodyear detrimentally altered the terms of conditions of Plaintiff's work

and her working environment.  For example:

    a.    Goodyear purposefully sent Plaintiff to incorrect worksites and then

        chastised and berated her for being at the wrong work location.

    b.    Goodyear permitted male laborers in the Construction Group, but not

        Plaintiff, to meet at the shop and drive together to worksites.

    c.    Goodyear subjected Plaintiff's work to heightened and unreasonable

        scrutiny.

    d.    Goodyear applied workplace policies, including discipline and

        attendance, in an uneven and disparate fashion based on gender.

    e.    Goodyear supported and assisted male employees working in

        Defendant Vartan's Construction Group, but refused to support or

        assist Plaintiff, instead yelling at her to "fucking figure it out."

    f.    Goodyear marginalized Plaintiff's role in the Construction Group,

        unreasonably criticized the quality of her work, and unfairly cast doubt

        on her construction industry knowledge with the intention of creating

        an environment in which Plaintiff's male colleagues did not respect her

        or work cooperatively or collaboratively with her.

30.     Taking a cue from Goodyear in connection with the conduct described in
Paragraphs 23 through 29 above, male colleagues in Defendant Vartan's
Construction Group treated Plaintiff with disrespect and misogyny and failed to
work cooperatively or collaboratively with her.

31.     However, one of Plaintiff's male colleagues recognized the hostile, abusive
and misogynistic manner in which Goodyear treated Plaintiff and told her he heard
Goodyear say, "I fuck with her because she is weak and a woman." (or words to that
effect).

32.     On January 28, 2020, Plaintiff lodged a formal complaint of gender and sexual
harassment and discrimination concerning Goodyear to his supervisor, Catherine
Prince Wilsbach ("Wilsbach").

33.     On that occasion, Wilsbach informed Plaintiff she was aware of Brian
Goodyear's angry outbursts and aggressive and inappropriate behavior.  She told
Plaintiff that Goodyear was "rough around the edges," and that he:

a.     Significantly damaged company truck with a 2x4 piece of lumber.

b.     Brought Wilsbach to tears on several occasions due to his "anger
management" issues, and that he needs to complete anger
management training.

c.     Was a "loose cannon" and "everybody knows it."

    d.    Is "mentally unstable" and "flies off the handle.

    e.    That she heard Defendant's President/CEO, Ralph Vartan, make reference to Goodyear's anger issues when Goodyear called Mr. Vartan a "fucking moron."

34.    Later that day, after regular work hours, Plaintiff met with Wilsbach and Defendant Conway at which time Plaintiff described the gender and sexual harassment and discrimination by Goodyear, his angry and violent behaviors, the hostile and abusive work environment, and that she was afraid for her safety and well-being at work.

35.    The next day, January 29, 2020, Goodyear called Plaintiff on her cell phone at about 6:00 AM and threatened to terminate her employment stating, "if you want to go to the office…go…but you're going to lose, and I'll make it my mission to get you fired."  He also told Plaintiff "this is your one and only warning" and hung-up.

36.    Plaintiff notified Wilsbach of the threatening call from Goodyear.

37.    Later that day, Plaintiff, Wilsbach and Defendant Conway spoke by phone at which time Plaintiff reinforced her fear of Goodyear and that she was afraid he would hurt her.

38.    During the call with Defendant Conway and Wilsbach on January 29, 2020, Plaintiff was directed to stay off work until Defendant Vartan could speak with

Goodyear but said it would not speak with Goodyear until after the weekend since

"it is Brian's birthday and we don't want to ruin it for him."

39.     On February 2, 2020, Wilsbach advised Plaintiff that a meeting had been

scheduled for February 5, 2020, to discuss her complaint about Goodyear.

40.     On February 5, 2020, Defendant Vartan held a meeting with Brian Goodyear

(attended by Wilsbach, Defendant Conway, and Plaintiff) at which Goodyear openly

apologized to Plaintiff for his "misplaced anger" and wanted to "move on."

41.     Upon information and belief, Defendant Vartan did not conduct an

investigation into Plaintiff's complaint of gender and sexual harassment and

discrimination by Goodyear.

42.     On March 6, 2020, the global pandemic spread of COVID-19 caused the

Commonwealth of Pennsylvania to issue an emergency disaster declaration.

43.     From March 13, 2020 until May 17, 2020, Plaintiff was not actively

performing services for Defendant Vartan as a result of the COVID-19 pandemic.

44.     On May 18, 2020, Plaintiff returned to work.

45.     It was explained to Plaintiff that due to social distancing recommendations

from the Center for Disease Control ("CDC"), employees working in Defendant

Vartan's Construction Group would operation in two-person crews.

46.    Goodyear assigned himself to work with Plaintiff in a two-person construction team.

47.    Goodyear assigned himself to work with Plaintiff in a two-person construction team with an intention to continue to sexually harass her because he knew that he could do so inconspicuously.

48.    On May 19, 2020, Goodyear and Plaintiff were working on a two-person construction team at a building owned by Defendant Vartan located on Pine Street in Harrisburg, Pennsylvania.

49.    Goodyear and Plaintiff were the only two individuals inside the Pine Street building which was locked to the public.

50.    On that occasion, Goodyear ordered Plaintiff to walk to the basement ostensibly to unlock a toolbox.

51.    Unbeknownst to Plaintiff, Goodyear followed her into the basement, turned-off the lights, and locked the door.

52.    At that moment, Goodyear grabbed Plaintiff from behind and by the hair, pulled her toward him, and pushed her down over the toolbox and attempted to unbuckle Plaintiff's belt.

53.    Plaintiff resisted and screamed "No!  Please, Brian No!  Don't do this!"

54.    Goodyear told Plaintiff she did "not have the right to say no" and continued to act aggressively while holding onto Plaintiff by her hair so that she could not release herself from his grasp.

55.    Goodyear then pushed Plaintiff onto her knees while still holding her by the hair and ordered Plaintiff to perform oral sex him.

56.    She refused and tried to push him away, but he overcame her with his strength and forced his penis into her mouth (paragraphs 48 through 55 hereinafter referred to as "Sexual Assault").

57.    When the Sexual Assault ended, Goodyear threatened Plaintiff and her family with physical harm by telling her he knew where Plaintiff lived, knew where her grandchildren went to school, and that if she knew what was good for her she would not tell anyone about the Sexual Assault.

58.    Goodyear also told Plaintiff "no one would believe you anyway" and told her to leave since "we've done enough work today…"

59.    Plaintiff left the Pine Street building and went home shaking and crying.

60.    The following day, May 20, 2020, Goodyear told Plaintiff he was sorry about this conduct the prior day and told her "it would never happen again."

61.    Later that day, Goodyear and Plaintiff worked together at Defendant Vartan's construction shop on Progress Avenue in Harrisburg.

62.    Goodyear directed Plaintiff into the paint room ostensibly to gather supplies and materials for a construction job.

63.    Plaintiff did not want to enter the paint room due to fear that Goodyear might sexually assault her.  Plaintiff told Goodyear "don't come in here…I can get the materials myself." Goodyear responded "get your ass in there…"

64.    Goodyear followed Plaintiff into the paint room, turned off the light, locked the door, and proceeded to sexually assault her for a second time.

65.    Goodyear again threatened Plaintiff that there would be serious consequences if she reported him to company officials, and repeatedly told her "no one would believe you anyway."  Goodyear said "I know you won't say anything because I know you value your job…"

66.    On Friday May 22, 2020, Goodyear attempted again to sexually assault Plaintiff.  Plaintiff again opposed and tried to extricate herself.  She asked him "how would your wife feel if she knew you were doing this to me?" and he responded by saying "I know…I am a monster…I don't know what is wrong with me…I know I need help…"

67.    Goodyear did not proceed to sexually assault Plaintiff on that occasion.

68.    However, over the ensuing months, Goodyear did continue to sexually harass Plaintiff including but not limited to the following:

a.  Subjecting her to inappropriate and unwelcome sexual advances.

b.  Cajoling Plaintiff to send him lewd pictures of herself.

c.  Asking Plaintiff to "uncover those titties."

d.  Grabbing/slapping Plaintiff's rear-end.

e.  Telling Plaintiff that if she "gets good and drunk" he was going to rape her.

f.  Pressuring Plaintiff and a female friend of hers to have three-way sex with him.

g.  Implying that Plaintiff and her female friend were prostitutes by offering Plaintiff money if she and her friend would agree to have three-way sex with him.

h.  On July 14, 2020, sending Plaintiff a text simply stating, "it's titty Tuesday."

i.  Grabbing Plaintiff by the hair, or from behind and forcefully groping her shoulder, breasts, and waist.

j.  Telling Plaintiff that "those Epstein girls had it coming to them.

69.  Plaintiff consistently opposed Goodyear's offensive sexual remarks and misconduct by telling him that his conduct was offensive and that she did not want to have a sexual relationship with him.  On every occasion, Plaintiff pleaded with

him to stop but Goodyear ignored Plaintiff's objections and continued to sexually harass her.

70.     Goodyear ignored Plaintiff's rejection of his sexual misconduct and harassment using threats of physical harm, threats of termination of employment, coercion, and intimidation.

71.     Plaintiff reasonably believed that her employment would be terminated and/or that Goodyear would inflict bodily harm upon her, or otherwise cause harm, if she were to report again Goodyear's sexual harassment and sexual assaults.

### The Final Report of Sexual Harassment

72.     On July 23, 2020, Plaintiff discussed Goodyear's sexual harassment and sexual assaults with her daughter, a Counselor/Advocate for a local non-profit crisis center that provides advocacy, empowerment, and education to victims, survivors, families, and communities to end patterns of violence and abuse.

73.     On July 24, 2020, Plaintiff and her daughter spoke with Defendant Conway to report Goodyear's on-going sexual harassment and sexual assaults.

74.     Plaintiff told Conway that she was afraid for her personal safety at work in the Construction Group due to Goodyear and the other men in the department.

75.     On July 26, 2020, Defendant Conway acknowledged Plaintiff's report of Goodyear's sexual harassment and sexual assaults, and informed Plaintiff that Goodyear had been placed on administrative leave pending an investigation.

76.     In connection with the investigation, Plaintiff and her daughter met with Defendant Conway and Defendant Vartan's legal counsel on July 28, 2020.

77.     During her discussion with Defendant Conway, Plaintiff's daughter asked "why did the company not take steps to protect my mother after the complaint in January…"

78.     Defendant Conway replied stating that "we just didn't believe your mother since we've known Brian longer than we've known your mother."

79.     At that time, Defendant Vartan informed Plaintiff that she would be transferred to Defendant Vartan's Maintenance Group.

80.     On July 30, 2020, Brian Goodyear's employment with Defendant Vartan terminated.

81.     On July 31, 2020, while returning a company vehicle, Brian Goodyear committed suicide in Defendant Vartan's parking lot.

### *The Retaliatory Termination of Plaintiff's Employment*

82.     On August 27, 2020, Defendant Vartan terminated Plaintiff's employment.

83.     In its letter to Plaintiff dated August 27, 2020, terminating Plaintiff's

employment, Defendant Vartan informed Plaintiff "Based on our current workload

and your request not to work with the construction team, we are unfortunately

eliminating your position effective immediately."

84.     Defendant Vartan possessed no good faith, legitimate basis to discharge

Plaintiff's employment.

85.     Defendant Vartan's purported basis to terminate Plaintiff's employment was

wholly without basis in fact and a pretext for unlawful retaliation.

86.     Defendant Vartan terminated Plaintiff's employment in retaliation for

Plaintiff's opposition to and reports of unlawful sex harassment by Goodyear, as

more fully described above.

87.     Upon information and belief, Plaintiff's position was replaced by and/or her

job duties reassigned to an individual who did not oppose sex harassment in the

workplace or lodge complaints of same.

88.     The termination of Plaintiff's employment constitutes adverse employment

action.

**COUNT I**

***Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.***
***Clara J. Hornberger v. Vartan Group, Inc.***
**GENDER/SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**

89.     Plaintiff Hornberger repeats and repleads Paragraphs 1 through 88 of this

Complaint and incorporates herein by reference as though fully set forth at length.

90.     At all relevant times hereto, Plaintiff Hornberger was a female who, during

her tenure of employment with Defendant Vartan, was a member of a class of

individuals protected against discrimination and/or harassment on the basis of her

gender, female.

91.     Title VII prohibits discriminatory treatment in employment and workplace

harassment on the basis of sex.

92.     At all relevant times hereto, Defendant Vartan owed a duty to its employees,

including Plaintiff, to provide a safe workplace free from sex harassment and

discrimination.

93.     Defendant Vartan was aware of its duty to provide a workplace free from sex

harassment and discrimination.

94.     As more fully described above, Defendant Vartan, and in particular Goodyear,

subjected Plaintiff to harassment and discrimination in the workplace because of

her sex, female.

95.     Defendant Vartan knew or should have known that Brian Goodyear possessed anger management issues and was prone to angry outbursts and offensive rhetoric.

96.     Defendant Vartan knew or should have known that Goodyear demonstrated violent and destructive behaviors at work.

97.     Defendant Vartan knew that Goodyear harbored misogynistic attitudes.

98.     Defendant Vartan knew that Goodyear subjected Plaintiff to gender and sexual harassment and discrimination at work.

99.     Nevertheless, Defendant Vartan failed to exercise reasonable care to prevent, correct or remedy Goodyear's sexual misconduct, harassment and discrimination.

100.    Defendant Vartan breached its duty to Plaintiff to provide a safe workplace free from unlawful harassment and discrimination.

101.    Defendant Vartan breached its duty to exercise reasonable care to prevent, correct or remedy sexual harassment and discrimination.

102.    The gender/sexual misconduct, harassment and discrimination by Goodyear includes, but is not limited to, the comments and actions described above (hereinafter collectively "Unlawful Sexual Harassment").

103.    Goodyear was aided in accomplishing the Unlawful Sexual Harassment of Plaintiff by virtue of his position as agent for Defendant Vartan.

104.    As a result of Defendant Vartan's failure to exercise reasonable care to prevent, correct and/or remedy the Unlawful Sexual Harassment, Goodyear was provided tacit authority by Defendant to engage in such conduct.

105.    As a result of the Unlawful Sexual Harassment and Defendant Vartan's failure to exercise reasonable care to prevent, correct and/or remedy same, Plaintiff became fearful of the workplace in general and of Goodyear in particular.

106.    The Unlawful Sexual Harassment, as more fully described above, was uninvited, unwelcomed, and unwanted by Plaintiff.

107.    The Unlawful Sexual Harassment, as more fully described above, was severe and pervasive.

108.    The Unlawful Sexual Harassment caused Plaintiff to become upset, emotionally distressed, fearful and mentally tormented.

109.    The Unlawful Sexual Harassment, as more fully described above, was offensive to Plaintiff and would have been offensive to a reasonable person under similar circumstances.

110.    By his conduct, Goodyear made exposure and submission to gender and sexual harassment and discrimination a term and condition of employment with Defendant Vartan.

111.    Defendant Vartan's policies and/or practices were utterly deficient and inadequate to prevent, correct and/or remedy gender and sexual harassment and discrimination in the workplace.

112.    The Unlawful Sexual Harassment was sufficiently severe and pervasive to create a hostile and abusive work environment for Plaintiff and negatively affect the terms and conditions of her employment with Defendant Vartan.

113.    Plaintiff's gender was the factor motivating Goodyear's offensive conduct, and but for Plaintiff's gender he would not have subjected her to such abhorrent behavior.

114.    The Unlawful Sexual Harassment, as more fully described above, was of a continuing nature and therefore constitutes a continuing violation of law.

115.    As a direct and proximate result of Defendant Vartan's actions and omissions, Plaintiff Hornberger has suffered and will continue to suffer loss of employment, lost wages and benefits, future lost wages and benefits, extreme mental anguish, significant mental health injuries, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

116.    As a direct and proximate result of Defendant Vartan's actions and omissions, as more fully described above, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

117.    The actions and/or omissions of Defendant Vartan as more fully described

above, were extreme and outrageous, egregious, and undertaken with malice or

reckless indifference to Plaintiff Hornberger's well-being and statutorily protected

rights.  Moreover, Defendant Vartan engaged in no good faith effort to comply with

the law or Plaintiff Hornberger's civil rights, and Plaintiff Hornberger is thereby

entitled to punitive damages, and claim is made therefor.

118.    Plaintiff is further entitled to recover reasonable attorney fees and litigation

expenses pursuant to Title VII, and claim is made therefor.

<u>**COUNT II**</u>
<u>***Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.***</u>
<u>***Clara J. Hornberger v. Vartan Group, Inc.***</u>
**RETALIATION**

119.    Plaintiff Hornberger repeats and repleads Paragraphs 1 through 118 of this

Complaint and incorporates herein by reference as though fully set forth at length.

120.    Title VII prohibits retaliation in the workplace against employees who have

complained of sexual harassment and/or discrimination in the workplace, those

who have made a charge of unlawful sexual harassment in the workplace, and/or

those who have otherwise opposed practices made unlawful under Title VII.

121.   As more fully described above, Plaintiff lodged with Defendant Vartan complaints of gender and sexual harassment and discrimination and generally opposed same in the workplace.

122.   Plaintiff's opposition to and/or reports of gender and sexual harassment and discrimination in the workplace constitutes protected activity pursuant to state and federal law.

123.   Defendant Vartan made exposure and submission to sexual banter, rhetoric, and other sexually inappropriate behavior and harassment conditions of employment with Defendant and, as more fully described above, by its actions and omissions, imposed upon Plaintiff a rule that she endure gender and sexual harassment and discrimination at work.

124.   Defendant Vartan's policies and/or practices were utterly deficient and inadequate to prevent, correct and/or remedy retaliation for opposing unlawful harassment.

125.   Because Plaintiff opposed gender and sexual harassment and discrimination at work, Defendant Vartan retaliated against her.

126.   Defendant Vartan, by and through its managerial agents, retaliated against Plaintiff on account of her protected activity by, among other things, failing to remedy the Unlawful Sexual Harassment, permitting Goodyear to continue to

subject Plaintiff to gender and sexual harassment and discrimination, Goodyear

continuing to subject Plaintiff to sexual harassment and sexual assaults, and by

terminating Plaintiff's employment on August 27, 2020, without cause.

127.   The unlawful retaliation, as more fully described above, was carried out by

Defendant Vartan acting by and through its managers, officers, and other

representatives, who were aided in accomplishing the above-described retaliation

by virtue of their positions as agents for Defendant Vartan.

128.   Defendant Vartan possessed no good faith, legitimate basis to discharge

Plaintiff's employment.

129.   Defendant Vartan's purported basis to terminate Plaintiff's employment was

wholly without basis in fact and a pretext for unlawful retaliation.

130.   Upon information and belief, Plaintiff's position was replaced by and/or her

job duties reassigned to an individual who did not oppose gender and sexual

harassment and discrimination at work or lodge complaints of same.

131.   Among other things, Plaintiff's termination from employment with Defendant

Vartan effective August 27, 2020, constitutes adverse employment action.

132.   The unlawful retaliation, as more fully described above, was of a continuing

nature and therefore constitutes a continuing violation of law up to and including

the termination of Plaintiff Hornberger's employment effective August 27, 2020.

133.   As a direct and proximate result of Defendant Vartan's actions and omissions, as more fully described above, Plaintiff has suffered and will continue to suffer loss of employment, and lost wages and benefits, and claim is made therefore.

134.   As a direct and proximate result of Defendant Vartan's actions and omissions, as more fully described above, Plaintiff is entitled to reinstatement to employment with Defendant Vartan, or front pay and benefits if reinstatement is not feasible, and claim is made therefore.

135.   As a direct and proximate result of Defendant Vartan's actions and omissions, as more fully described above, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

136.   As a direct and proximate result of Defendant Vartan's actions and omissions, as more fully described above, Plaintiff has sustained extreme mental anguish, significant mental health injuries, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

137.   The actions and/or omissions of Defendant Vartan as more fully described above, were extreme and outrageous, egregious, and undertaken with malice or reckless indifference to Plaintiff Hornberger's well-being and statutorily protected rights.  Moreover, Defendant Vartan engaged in no good faith effort to comply with

the law or Plaintiff Hornberger's civil rights, and Plaintiff Hornberger is thereby

entitled to punitive damages, and claim is made therefor.

138.    Plaintiff is further entitled to recover reasonable attorney fees and litigation

expenses pursuant to Title VII, and claim is made therefor.

**COUNT III**
***Pennsylvania Human Relations Act, 43 P.S. §§951 et seq***
***Clara J. Hornberger v. Vartan Group, Inc.***
**Harassment, Discrimination, and Retaliation**

139.    Plaintiff Hornberger repeats and repleads Paragraphs 1 through 138 of this

Complaint and incorporates herein by reference as though fully set forth at length.

140.    The actions and/or omissions identified herein, as more fully set forth above

and incorporated hereto by reference, violate the Pennsylvania Human Relations

Act, 43 P.S. §955 et seq.

141.    The unlawful sexual harassment, discrimination, and retaliation, as more fully

described above, resulted in a hostile and abusive work environment for Plaintiff

Hornberger, as more fully described above.

142.    The unlawful sexual harassment, discrimination, and retaliation, as more fully

described above, resulted in tangible job detriments and/or adverse employment

action, as more fully described above, including but not limited to the termination

of Plaintiff Hornberger's employment effective August 27, 2020.

143.   The unlawful sexual harassment, discrimination, and retaliation, as more fully described above, was of a continuing nature and therefore constitutes a continuing violation of law up to and including the termination of Plaintiff Hornberger's employment effective August 27, 2020.

144.   As a direct and proximate result of Defendant Vartan's actions and omissions, Plaintiff Hornberger has sustained damages as more fully described above and incorporated hereto by reference including, but not limited to, loss of employment, lost wages and benefits, future lost wages and benefits, harm to earning and earning capacity, extreme mental anguish, significant mental health injuries, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

145.   Plaintiff is further entitled to recover reasonable attorney fees and litigation expenses pursuant to the Pennsylvania Human Relations Act, and claim is made therefor.

**COUNT IV**
***Pennsylvania Human Relations Act, 43 P.S. §§951 et seq***
***Clara J. Hornberger v Nicole L. Conway***
**AIDING AND ABETTING**

146.   Plaintiff Hornberger repeats and repleads Paragraphs 1 through 145 of this Complaint and incorporates herein by reference as though fully set forth at length.

147.   The PHRA renders it unlawful for any "*person*...to aid, abet, incite, compel or

coerce the doing of any act declared...to be an unlawful discriminatory practice,

or...to commit any act declared...to be an unlawful discriminatory

practice."(emphasis added).  43 P.S. § 955(e).

148.   Defendant Vartan Group, Inc. committed acts declared by the PHRA to be

unlawful discriminatory and/or retaliatory practices including, but not limited to,

unlawful gender and sexual harassment/discrimination and retaliation, as more fully

described above resulting in the termination of Plaintiff's employment effective

August 27, 2020.

149.   Defendant Conway aided, abetted, incited, compelled or coerced Defendant

Vartan Group, Inc. to engage in actions declared by the PHRA to be unlawful.

150.   Plaintiff's gender and/or her opposition to gender and sex discrimination and

harassment in the workplace was the factor motivating Defendant Conway to aid,

abet, incite, compel or coerce the Defendant Vartan Group, Inc. to engage in actions

declared by the PHRA to be an unlawful discriminatory and retaliatory practices.

151.   Defendant Conway is liable to Plaintiff for damages caused by her violation of

43 P.S. § 955(e) of the PHRA.

152.   As a direct and proximate result of Defendant Conway's actions and

omissions, as more fully described above, Plaintiff Hornberger has sustained

damages as more fully described above and incorporated hereto by reference

including, but not limited to, loss of employment, lost wages and benefits, future

lost wages and benefits, harm to earning and earning capacity, extreme mental

anguish, significant mental health injuries, personal humiliation, painful

embarrassment, disruption of personal life and loss of enjoyment in life, and claim is

made therefor.

153.   Plaintiff is further entitled to recover reasonable attorney fees and litigation

expenses pursuant to the Pennsylvania Human Relations Act, and claim is made

therefor

## COUNT V
### *Clara J. Hornberger v. The Estate of Brian Goodyear*
### ASSAULT

154.   Plaintiff Hornberger repeats and repleads Paragraphs 1 through 153 of this

Complaint and incorporates herein by reference as though fully set forth at length.

155.   At all relevant times hereto, Brian Goodyear had the intent to accomplish his

purpose of non-consensual sexually offensive bodily contact with Plaintiff

Hornberger.

156.   At the time of the various incidents that form the subject of this Complaint,

Goodyear was in close proximity to the Plaintiff.

157.   At all relevant times hereto, Goodyear had the present ability and opportunity to inflict non-consensual, harmful and/or offensive sexual physical contact upon Plaintiff Hornberger.

158.   Goodyear deliberately and intentionally caused Plaintiff Hornberger to fear an imminent battery by committing an overt act toward accomplishment of said battery, including but not limited to the unlawful sexual harassment as more fully described above.

159.   The conduct of Goodyear, as set forth above, was intended to place Plaintiff Hornberger in a reasonable apprehension of an imminent battery and succeeded in doing same.

160.   The aforesaid assault gave rise to feelings of fright, shock, and anger in Plaintiff Hornberger.

161.   Defendant The Estate of Brian Goodyear is liable to Plaintiff Hornberger for the actions of Brian Goodyear described herein.

162.   As a direct and proximate result of Goodyear's conduct, as more fully set forth above, Plaintiff Hornberger suffered severe emotional distress which resulted in symptoms including but not limited to feelings of fright, shock, humiliation, embarrassment, severe anxiety, outrage, guilt, depression, panic, paranoia and diminished self-esteem.

163.   As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger suffered severe emotional distress and significant mental health injuries, and claim is made therefore.

164.   As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone and in the future will undergo, great mental suffering, inconvenience in carrying out daily activities, loss of life's pleasure and enjoyment, and claim is made therefore.

165.   As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone and in the future will undergo, great humiliation and embarrassment, and claim is made therefor.

166.   As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone and in the future will undergo, an impairment of earning power and capacity and claim is made therefor.

167.   As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has incurred and will in the future incur liability for medical and rehabilitative expenses, psychiatric/psychological counseling expenses, and claim is made therefor.

168.   As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has sustained a loss of earnings and claim is made therefor.

169.   The actions of Goodyear, as more fully described above, constitutes extreme and outrageous conduct that evidenced a wanton disregard for the safety and well-being of Plaintiff Hornberger and which were undertaken with the direct intent to harm Plaintiff and/or callous disregard for Plaintiff's well-being, thereby warranting the imposition of punitive damages and claim is made therefor.

### COUNT VI
### *Clara J. Hornberger v. The Estate of Brian Goodyear*
### BATTERY

170.   Plaintiff Hornberger repeats and repleads Paragraphs 1 through 169 of this Complaint and incorporates herein by reference as though fully set forth at length.

171.   At all relevant times hereto, Brian Goodyear had the intent to accomplish his purpose of non-consensual sexually offensive bodily contact with Plaintiff Hornberger.

172.   At all relevant times hereto, Goodyear had the present ability and opportunity to inflict non-consensual, harmful and/or offensive sexual physical contact upon Plaintiff Hornberger.

173.   Brian Goodyear did, in fact, engage in non-consensual offensive sexual bodily contact with Plaintiff Hornberger, including but not limited to the following:

   a.   Grabbing/slapping Plaintiff's rear-end.

     b.     Grabbing Plaintiff by the hair from behind and forcefully groping her

          shoulder, breasts, and waist.

     c.     Forcing Plaintiff to perform oral sex on him using threats of physical

          harm, threats of termination of employment, and intimidation.

174.  The aforesaid battery gave rise to feelings of fright, shock, and anger in Plaintiff Hornberger.

175.  Defendant The Estate of Brian Goodyear is liable to Plaintiff Hornberger for the actions of Brian Goodyear described herein.

176.  As a direct and proximate result of Goodyear's conduct, as more fully set forth above, Plaintiff Hornberger suffered severe emotional distress which resulted in symptoms including but not limited to feelings of fright, shock, humiliation, embarrassment, severe anxiety, outrage, guilt, depression, panic, paranoia and diminished self-esteem.

177.  As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger suffered severe emotional distress and significant mental health injuries, and claim is made therefore.

178.  As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone and in the future will

undergo, great mental suffering, inconvenience in carrying out daily activities, loss of life's pleasure and enjoyment, and claim is made therefore.

179.  As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone and in the future will undergo, great humiliation and embarrassment, and claim is made therefor.

180.  As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone, and in the future will undergo, an impairment of earning power and capacity and claim is made therefor.

181.  As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has incurred and will in the future incur liability for medical and rehabilitative expenses, psychiatric/psychological counseling expenses, and claim is made therefor.

182.  As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has sustained a loss of earnings and claim is made therefor.

183.  The actions of Brian Goodyear, as more fully described above, constitutes extreme and outrageous conduct that evidenced a wanton disregard for the safety and well-being of Plaintiff Hornberger and which were undertaken with the direct intent to harm Plaintiff and/or callous disregard for Plaintiff's well-being, thereby warranting the imposition of punitive damages and claim is made therefor.

**COUNT VII**
*Clara J. Hornberger v The Estate of Brian Goodyear*
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

184.   Plaintiff Hornberger repeats and repleads Paragraphs 1 through 183 of this

Complaint and incorporates herein by reference as though fully set forth at length.

185.   Plaintiff Hornberger has suffered irreparable and severe emotional distress

and harm by the intentional and/or reckless conduct of Brian Goodyear.

186.   Goodyear expressed extreme and outrageous conduct towards Plaintiff

Hornberger, including but not limited to unlawful sexual harassment, assault and

battery of Plaintiff Hornberger.

187.   Goodyear harassed and abused Plaintiff Hornberger including but not limited

to the unlawful sexual harassment, discrimination, assault, and battery, of Plaintiff

Hornberger as more fully described above.

188.   Goodyear demonstrated utter disregard for Plaintiff Hornberger's well-being

and intentionally, recklessly and/or viciously demeaned the Plaintiff by his repeated

actions and conduct, as more fully described above.

189.   The outrageous conduct of Goodyear, as more fully described above,

evidenced extreme disregard for Plaintiff Hornberger's well-being and caused

Plaintiff Hornberger severe emotional distress.

190.   The aforesaid assault gave rise to feelings of fright, shock, and anger in

Plaintiff Hornberger.

191.   Defendant The Estate of Brian Goodyear is liable to Plaintiff Hornberger for

the actions of Brian Goodyear described herein.

192.   As a direct and proximate result of Goodyear's conduct, as more fully set

forth above, Plaintiff Hornberger suffered severe emotional distress which resulted

in symptoms including but not limited to feelings of fright, shock, humiliation,

embarrassment, severe anxiety, outrage, guilt, depression, panic, paranoia and

diminished self-esteem.

193.   As a direct and proximate result of Goodyear's conduct, as more fully

described above, Plaintiff Hornberger suffered severe emotional distress and

significant mental health injuries, and claim is made therefore.

194.   As a direct and proximate result of Goodyear's conduct, as more fully

described above, Plaintiff Hornberger has undergone and in the future will undergo,

great mental suffering, inconvenience in carrying out daily activities, loss of life's

pleasure and enjoyment, and claim is made therefore.

195.   As a direct and proximate result of Goodyear's conduct, as more fully

described above, Plaintiff Hornberger has undergone and in the future will undergo,

great humiliation and embarrassment, and claim is made therefor.

196.    As a direct and proximate result of Goodyear's conduct, as more fully described above, Plaintiff Hornberger has undergone and in the future will undergo, an impairment of earning power and capacity and claim is made therefor.

197.    As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has incurred and will in the future incur liability for medical and rehabilitative expenses, psychiatric/psychological counseling expenses, and claim is made therefor.

198.    As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has sustained a loss of earnings and claim is made therefor.

199.    The actions of Brian Goodyear, as more fully described above, constitutes extreme and outrageous conduct that evidenced a wanton disregard for the safety and well-being of Plaintiff Hornberger and which were undertaken with the direct intent to harm Plaintiff and/or callous disregard for Plaintiff's well-being, thereby warranting the imposition of punitive damages and claim is made therefor.

**COUNT VIII**
*Clara J. Hornberger v. Vartan Group, Inc.*
**NEGLIGENT SUPERVISION AND RETENTION**

200.    Plaintiff Hornberger repeats and repleads Paragraphs 1 through 199 of this Complaint and incorporates herein by reference as though fully set forth at therefor.

201.   Brian Goodyear has a history of workplace misconduct and harassment and was prone to angry outbursts and offensive rhetoric while employed by Defendant Vartan.

202.   Defendant Vartan knew or should have known of Goodyear's history of such conduct and that his continued employment by Vartan created a situation where harm to those in the workplace, and in particular employees such as Plaintiff who worked in proximity to Goodyear, was likely to occur.

203.   The harm caused to Plaintiff by Goodyear, as more fully described above, was reasonably foreseeable by Defendant Vartan based on his known conduct and/or its receipt of complaints about Goodyear's conduct while employed by Vartan.

204.   As a result of the foreseeability of Goodyear's history of workplace misconduct and harassment and anger management issues, Defendant owed a duty to Plaintiff to ensure that she was not subjected to harm or violence in the workplace by Goodyear.

205.   Defendant Vartan breached its duty to Plaintiff to take reasonable steps to ensure that she was not subjected to harm or violence in the workplace by Goodyear.

206.   As a direct and proximate result of Defendant Vartan's breach of its duty to Plaintiff to ensure that she was not subjected to harm or violence in the workplace

by Goodyear's conduct, as more fully set forth above, Plaintiff Hornberger suffered

severe emotional distress which resulted in symptoms including but not limited to

feelings of fright, shock, humiliation, embarrassment, severe anxiety, outrage, guilt,

depression, panic, paranoia and diminished self-esteem.

207.   As a direct and proximate result of Defendant Vartan's actions and omissions,

as more fully described above, Plaintiff Hornberger suffered severe emotional

distress and significant mental health injuries, and claim is made therefor.

208.   As a direct and proximate result of Defendant Vartan's actions and omissions,

as more fully described above, Plaintiff Hornberger has undergone and in the future

will undergo, great mental suffering, inconvenience in carrying out daily activities,

loss of life's pleasure and enjoyment, and claim is made therefor.

209.   As a direct and proximate result of Defendant Vartan's actions and omissions,

as more fully described above, Plaintiff Hornberger has undergone and in the future

will continue to undergo, great humiliation and embarrassment, and claim is made

therefor.

210.   As a direct and proximate result of Defendant Vartan's actions and omissions,

as more fully described above, Plaintiff Hornberger has undergone and in the future

will continue to undergo, an impairment of earning power and capacity and claim is

made therefor.

211.   As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has incurred and will in the future incur liability for medical and rehabilitative expenses, psychiatric/psychological counseling expenses, and claim is made therefor.

212.   As a direct and proximate result of the aforesaid injuries, Plaintiff Hornberger has sustained a loss of earnings and claim is made therefor.

213.   The actions and omissions of Defendant Vartan, as more fully described above, constitutes extreme and outrageous conduct that evidenced a wanton disregard for the safety and well-being of Plaintiff Hornberger and which were undertaken with the direct intent to harm Plaintiff and/or callous disregard for Plaintiff's well-being, thereby warranting the imposition of punitive damages and claim is made therefor.

**WHEREFORE**, Plaintiff Hornberger requests this Honorable Court to enter judgment in her favor and against the Defendants, jointly and severally, for:

1.   Back pay and benefits;

2.   Front pay and benefits should reinstatement prove unfeasible;

3.   Statutory prejudgment interest;

4.   Compensatory damages;

5.   Reasonable attorney fees and costs;

7.      Punitive damages;

8.      An Order prohibiting Defendant Vartan, its officers, successors and assigns, and all persons in active concert or participation with it from engaging in sexual harassment, disparate treatment, constructive discharge and any other employment practice which discriminates on the basis of sex;

9.      An Order requiring Defendant Vartan to institute and carry out policies, practices and programs which provide equal employment opportunities for women and which eradicate the effects of past and present unlawful employment practices;

10.      An Order requiring Defendant Vartan to institute and carry out a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against discrimination and harassment;

11.      An Order prohibiting Defendant Vartan, its officers, successors and assigns, and all persons in active concert or participation with it from engaging in retaliation against those who engage in legally protected activities;

12.      An Order requiring Defendant Vartan to institute and carry out a training program which shall promote supervisor accountability, imposing on all managers and supervisory personnel a duty to actively monitor the work area to ensure compliance with policies on non-discrimination; and requiring all managers

and supervisors to report any incidents and/or complaints of harassment and/or

retaliation of which they become aware to the department charged with handling

such complaints; and

      13.     Any other relief that this Court deems just and equitable.

                        Respectfully submitted,

                        KREVSKY BOWSER LLC

                        /s/ Solomon Z Krevsky
                        Solomon Z Krevsky (PA #72719)
                        skrevsky@krevskybowser.com
                        Anthony T Bowser (PA # 204561)
                        abowser@krevskybowser.com
                        Deborah Ann Gearhart (PA # 330772)
                        dgearhart@krevskybowser.com
                        20 Erford Road | Suite 300A
                        Lemoyne, PA 17043
                        717.731.8600
                        *Counsel for Plaintiff*